IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

CARL GLOVER,

                 Plaintiff,                         No. 3:10-CV-824-PK

        v.

MICHAEL J. ASTRUE, COMMISSIONER
of Social Security,                       OPINION & ORDER

                 Defendant.

David B. Lowry
Attorney at Law
9900 SW Greenburg Road
Columbia Business Center. Suite 130
Portland, OR 97223

       Attorney for Plaintiff

S. Amanda Marshall
UNITED STATES ATTORNEY
District of Oregon

Adrian L. Brown
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue., Suite 600
Portland, Oregon 97201-2902

Leisa A. Wolf
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

      Attorneys for Defendant

HERNANDEZ, District Judge:

      In a September 20, 2011 Order, I adopted in part Magistrate Judge Papak's Findings and

Recommendation (#29), in which he recommended that the Court affirm the decision of the

Commissioner to deny Disability Insurance Benefits (DIB) and Supplemental Security Income

(SSI) to plaintiff.   I adopted all of Magistrate Judge Papak's findings except his finding that the

Administrative Law Judge (ALJ) had properly rejected lay witness testimony.

      As I explained in the Order, cases in the Ninth Circuit appear to hold both that an ALJ

may reject lay witness testimony that is inconsistent with the medical evidence and that an ALJ

may not reject lay witness testimony that is unsupported or uncorroborated by the medical

evidence.   Sept. 20, 2011 Ord. at pp. 4-6.   I concluded that the cases were reconcilable based on

where in the five-step sequential analysis the ALJ considered the lay testimony.   Id.   I held that

the ALJ may reject lay testimony as unsupported by, or inconsistent with, the medical evidence

when the lay testimony related to the existence of an impairment at step two of the five-step

sequential analysis used to determine disability.   But, I also held that the ALJ may not reject lay

testimony as unsupported by, or inconsistent with, the medical evidence when the lay testimony

2 - OPINION & ORDER

was given in support of a claimant's subjective limitations at step four and as part of ascertaining the claimant's residual functional capacity (RFC).

Based on my legal conclusion, I held that the ALJ in the instant case erred when in determining the plaintiff's limitations at step four, he rejected lay testimony because it was inconsistent with, or unsupported by, the medical evidence.  Simultaneously with my Order, a Judgment reversing the Commissioner's decision was entered September 20, 2011.

Defendant moves to alter or amend the Judgment, arguing that my legal analysis on the lay witness issue was in error.  Having now spent considerable time re-reading the cases and further researching the regulatory framework, I agree with defendant.

The first relevant Ninth Circuit case concerning the ALJ's handling of lay witness testimony is <u>Vincent v. Heckler</u>, 739 F.2d 1393 (9th Cir. 1984).  There, the court considered the ALJ's rejection of certain lay testimony:

> Mary Manser, a former employee of Vincent's, testified that Vincent suffered serious mental impairment as a result of his second stroke. Additionally, Thomas Vincent testified that his father's second stroke had left him impaired. The ALJ did not discuss this testimony in his hearing decision. Once again, this omission does not require reversal.
>
> Although courts have upheld the use of lay testimony in some instances, <u>see Singletary v. Secretary of HEW</u>, 623 F.2d 217 (2d Cir.1980), it is not the equivalent of "medically acceptable . . . diagnostic techniques" that are ordinarily relied upon to establish a disability.  <u>See</u> 42 U.S.C. § 423(d)(3); <u>Hall v. Secretary of HEW</u>, 602 F.2d 1372 (9th Cir.1979). The ALJ properly discounted lay testimony that conflicted with the available medical evidence.

<u>Vincent</u>, 739 F.2d at 1395.  Although the court did not expressly discuss where in the five-step sequential analysis the lay witnesses' testimony was offered, the court's discussion of the issue and its citation to 42 U.S.C. § 423(d)(3) indicate that the lay testimony in <u>Vincent</u> went to

3 - OPINION & ORDER

whether the plaintiff had an impairment in the first instance.  The absence of a citation to Social

Security Ruling (SSR) 82-58, a policy statement regarding the evaluation of symptoms and pain

and which was in effect at the time <u>Vincent</u> was decided, further indicates that the issue in

<u>Vincent</u> was whether the plaintiff had an impairment at step two.  The testimony was not being

offered on the intensity, persistence, or limiting effects of symptoms produced by an impairment

already established by the objective medical evidence.

Section 423(d)(3) of the Social Security Act provides, as it did at the time <u>Vincent</u> was

decided, that a "physical or mental impairment" is "an impairment that results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  As the statute makes

clear, lay testimony cannot be used to establish an impairment.  Thus, when such testimony is

offered in support of the existence of an impairment, it is properly rejected if it conflicts with, or

is unsupported by, the objective medical evidence.

SSR 82-58 provided that in making the RFC assessment, the functionally limiting effects

of symptoms such as pain, "must be considered in terms of any additional physical or mental

restrictions they may impose beyond those clearly demonstrated by the objective physical

manifestations of disorders."  SSR 82-58, available at 1982 WL 31378, at *2.  Although

acknowledging that symptoms "are subjective and cannot be quantified by any reliable method,"

SSR 82-58 instructed that symptom-related functional limitations "must largely be inferred from

the history and the objective physical findings . . . and from medical knowledge as to what

symptom-related effects on functional capacity can be reasonably expected."  <u>Id.</u>  The policy

statement made clear that "[t]he absence of such history and objective clinical findings, with few

exceptions, will be inconsistent with a conclusion that the symptom diminishes functional capacity."  Id.

Thus, at the time Vincent was decided, the relevant policy statement concerning the RFC assessment at step four suggested that evidence of symptom-related functional limitations which was inconsistent with the objective medical evidence was not entitled to much, if any, weight.

In 1988, SSR 88-13 superseded SSR 82-58.  The purpose of SSR 88-13 was to reiterate the policy on the evaluation of pain and other symptoms and to provide guidance on the consideration to be given to symptoms, including pain, in the evaluation of disability.  SSR 88-13, available at 1988 WL 236011, at *1.  As with SSR 82-58, SSR 88-13 provided that if the claimant did not have a listed impairment, an RFC assessment was necessary to determine the effects of the impairment, including any additional limitations imposed by pain, on the claimant's capacity to perform former work or other work.  Id. at *2.  Also, again similar to SSR 82-58, SSR 88-13 indicated that medical history and objective medical evidence are "reliable indicators" from which conclusions about the intensity and persistence of pain and its effect on the individual's work capacity, may be drawn.  Id.  Although phrased somewhat differently than SSR 82-58, SSR 88-13 retained the idea that it was permissible to reject evidence of symptom-related functional limitations which was not consistent with the medical evidence.  Id. ("statements . . . as to the intensity and persistence of pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings are to be included in the evidence to be considered in making a disability determination.").

However, in contrast to SSR 82-58, SSR 88-13 addressed the responsibility of the adjudicator when the objective medical evidence did not support the allegations of pain or

symptom-related limitations on the claimant's ability to work.  SSR 88-13 expressly stated that

> [w]hen the claimant indicates that pain is a significant factor of his/her alleged
> inability to work, and the allegation is not supported by objective medical
> evidence in the file, the adjudicator shall obtain detailed descriptions of daily
> activities by directing specific inquiries about the pain and its effects to the
> claimant, his/her physicians from whom medical evidence is being requested, and
> other third parties who would be likely to have such knowledge.

Id. at *3.

The quoted language in the preceding paragraph was the basis for the Ninth Circuit's

holding in its next relevant case addressing the consideration of lay witness testimony.  In

Smolen v. Chater, 80 F.3d 1273 (9th Cir. 1996), the court considered whether an ALJ could

reject testimony by the plaintiff's family members regarding the extent of the plaintiff's alleged

symptoms related to a demonstrated impairment because the testimony was not supported by the

medical evidence.  As described by the Ninth Circuit,

> [c]ontrary to the testimony of Smolen's family members, the ALJ concluded that,
> because Smolen's medical records through 1987 did not reflect symptoms of
> fatigue and severe back pain, it was "simply beyond belief that Smolen suffered
> such fatigue[,] back pain[,] and dysfunction during her 14-year gap between her
> two severe bouts of cancers[.]"

Id. at 1289 (quoting ALJ decision; ellipses omitted).

The Ninth Circuit concluded that the ALJ erred:

> The rejection of the testimony of Smolen's family members because Smolen's
> medical records did not corroborate her fatigue and pain violates SSR 88-13,
> which directs the ALJ to consider the testimony of lay witnesses where the
> claimant's alleged symptoms are unsupported by her medical records.  See SSR
> 88-13 (where "allegation [of subjective symptom] is not supported by objective
> medical evidence in the file, the adjudicator shall obtain detailed descriptions of
> daily activities by directing specific inquiries about  the [symptom] and its effects
> to  . . . third parties who would be likely to have such knowledge.").

Id.  Smolen recognized that SSR 88-13 prohibited the rejection of lay witness testimony as

unsupported by the medical evidence because under SSR 88-13, it is the absence of corroborating

medical evidence in the first place that prompts the ALJ to consider such testimony.

Before <u>Smolen</u> was decided, the Social Security Administration (SSA) promulgated new

rules regarding the evaluation of symptoms and pain.  The rules, effective November 14, 1991,

expanded upon previous regulations to incorporate the terms of the statutory standard for

evaluating pain and other symptoms and to incorporate related statements of policy interpretation

set forth in SSRs and program operating instructions.  56 Fed. Reg. 57928 (1991), available at

1991 WL 235791.  The relevant amended regulations were 20 C.F.R. § 404.1529 and 20 C.F.R. §

416.929.  56 Fed. Reg. 57941, 57944.  The subsections of those regulations discussing the

evaluation of the intensity and persistence of symptoms and pain and discussing the

determination of the extent to which such symptoms limit a claimant's ability to work provided

that the SSA would consider "all of the available evidence, including your medical history, the

medical signs and laboratory findings, and statements from you, your treating or examining

physician or psychologist, or other persons about how your symptoms affect you."  20 C.F.R. §§

404.1529(c)(1) , 416.929(c)(1) (1992).  The regulations expressly stated that the SSA will always

consider objective medical evidence in assessing the intensity and persistence of symptoms.  20

C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (1992).

Recognizing that symptoms "sometimes suggest a greater severity of impairment than can

be shown by objective medical evidence alone," the regulations indicated that evidence from

"other persons" is important and that any "symptom-related functional limitations and restrictions

which . . . other persons[] report" will be taken into account when it "can reasonably be accepted

as consistent with the objective medical evidence and other evidence[.]"  20 C.F.R. §§

404.1529(c)(3), 416.929(c)(3) (1992).[1]

SSR 88-13 remained in effect after the adoption of the November 14, 1991 regulations. Thus, notwithstanding the new regulations in the Code of Federal Regulations, the policy statements expressed in SSR 88-13 continued to be valid.

On October 31, 1995, the SSA issued SSR 95-5p, which was effective on that date and which expressly superseded SSR 88-13. SSR 95-5p, available at 1995 WL 670415; see also 60 Fed. Reg. 55406-0 (1995) (showing effective date). SSR 95-5p's effective date was after Smolen was argued and submitted, but before the Smolen opinion was published in March 1996. The SSA explained that the November 14, 1991 regulations codified the policy interpretations in SSR 88-13, making it unnecessary to retain the statements of policy interpretation set forth in that ruling. SSR 95-5p, 1995 WL 670415 at *1. Nonetheless, the SSA published SSR 95-5p in order to "replace the section" of SSR 88-13 entitled "Importance of Considering Allegations of Pain in Assessing RFC and Explaining Conclusions Reached," and which provided procedures the SSA had determined were inappropriate for inclusion in the November 14, 1991 regulations. Id.

SSR 95-5p provided that "[b]ecause symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, careful consideration must be given to any available information about symptoms." Id. "The RFC assessment . . . must describe the relationship between the medically determinable impairment(s) and the conclusions regarding functioning which have been derived from the evidence, and must include a discussion of why reported daily activity limitations or restrictions are or are not reasonably consistent with

---

[1] The regulations remain effective today, with minor inconsequential changes in language.

the medical and other evidence."  Id.[2]

Five years after the Ninth Circuit issued Smolen, the court stated in Lewis v. Apfel that "[o]ne reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence."  236 F.3d 503, 511 (9th Cir. 2001) (citing Vincent).  Four years later, the Ninth Circuit stated that "[i]nconsistency with medical evidence" is a germane reason for discrediting the testimony of lay witnesses.  Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (citing Lewis).

In 2009, however, the court, citing Smolen and its reliance on SSR 88-13, stated that an ALJ could not discredit lay testimony as not supported by medical evidence in the record.  Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009) (also noting that the ALJ should not have discredited the lay witness testimony "on the basis of its relevance or irrelevance to medical conclusions.").  Cases issued after Bruce have cited it positively.  E.g., Massey v. Commissioner, 400 Fed. Appx. 192, 194 (9th Cir. 2010).

Various district courts in the Ninth Circuit have suggested that the Vincent/Lewis/Bayliss line of cases conflicts with the Smolen/Bruce line of cases.  E.g., Bolar v. Astrue, No. ED CV 10–1748 PJW, 2011 WL 5036826, at *4 (C.D. Cal. Oct. 24, 2011) (explaining that it is "unclear under Ninth Circuit case law whether an ALJ may summarily reject lay testimony based on the fact that it is 'not supported by the objective medical findings'" because "[o]ne line of cases suggests that this is improper . . . [while] [a]nother line of cases suggests that it is not") (citations omitted); Bond v. Astrue, No. ED CV 10-00106 RZ, 2010 WL 4272870, at *1 (C.D. Cal. Oct.

─────────────────────

    [2]  SSR 95-5p was subsequently superseded by SSR 96-7p, effective July 2, 1996.  1996 WL 374186.

25, 2010) (noting that there are "two strands of cases addressing the issue" of when the ALJ may reject lay witness testimony based on medical evidence; "the <u>Smolen</u> line of cases is at odds with the <u>Vincent</u> line, and neither line of cases address the other line"); <u>Seaman v. Astrue</u>, No. C09-5353FDB-KLS, 2010 WL 1980331, at *6-7 (W.D. Wash. Apr. 19, 2010) (noting "apparent conflict" between <u>Bruce/Smolen</u> on the one hand and <u>Bayliss/Lewis/Vincent</u> on the other); <u>Cook v. Astrue</u>, No. CV-08-636-TUC-DTF. 2010 WL 729414, at *12 (D. Ariz. Mar 1, 2010) (noting conflicting case law in the Ninth Circuit regarding the grounds an ALJ may use to reject lay witness testimony such as "cases which state that the lack of medical evidence supporting a lay statement is not a proper reason to discount it . . . and other cases that say it is[.]") (citations omitted).

It was this apparent conflict that I confronted in my earlier September 20, 2011 Order when I explained that because <u>Vincent</u> was a step two case, and <u>Smolen</u> was a step four case, <u>Lewis</u>, which was a step four case and which cited <u>Vincent</u> but not <u>Smolen</u>, had "failed to appreciate the distinction between relying on lay testimony to establish an impairment versus relying on lay testimony to establish symptoms, pain, or limitations not based on medical evidence but caused by the impairment." Sept. 20, 2011 Ord. at pp. 5-6. Because I concluded that <u>Lewis</u> had mistakenly expanded <u>Vincent</u> with no recognition of <u>Smolen</u>, I further concluded that the ALJ may properly reject lay testimony as inconsistent with the medical evidence when the testimony is offered to establish an impairment, but may not reject lay testimony for that reason when that testimony is offered to establish symptoms, pain, or other limitations.  <u>Id.</u>

Defendant now argues that I erred because a closer examination of the cases offers a different and more supportable approach to reconciling what appear to be competing lines of

cases.  Defendant argues that a careful reading of the five leading cases indicates that the ALJ

may properly reject lay witness testimony when it is <u>inconsistent with</u> or when it <u>conflicts</u> with

the medical evidence, regardless of whether that testimony is offered at step two in support of

establishing an impairment, or at step four, when the ALJ is developing the RFC and assessing

the claimant's symptoms and pain.  Conversely, the ALJ may <u>not</u> properly reject lay witness

testimony because the medical evidence does not <u>support</u> or <u>corroborate</u> such testimony.  The

<u>Vincent/Lewis/Bayliss</u> line of cases, defendant's argument goes, are all "conflict" or

"inconsistent" based cases, while the <u>Smolen/Bruce</u> line of cases are both "unsupported" or

"uncorroborated" based cases.  So understood, defendant argues, there is no conflict in the cases

because they address entirely different situations.[3]

       Some courts have adopted this rationale.  In a 2010 case, the Western District of

Washington distinguished the <u>Smolen/Bruce</u> line of cases from <u>Bayliss</u> by recognizing that in

<u>Smolen/Bruce</u>, the ALJ had rejected the lay witness testimony based on a general lack of support

from the medical evidence whereas in <u>Bayliss</u> and similar cases, there is specific inconsistent or

----

    [3]  Defendant then contends that when this analysis is applied to the instant case, the ALJ's
rejection of the lay testimony at issue must be affirmed because the ALJ found the testimony to
be inconsistent with the medical evidence.  According to Magistrate Judge Papak, "[t]he ALJ was
correct in rejecting Fuller's testimony on these issues because it was inconsistent with the
medical record."  Findings & Rec. at p. 19.  But, the ALJ himself said the following:
"Ms. Fuller's statements are accepted as descriptive of [her] perceptions.  However, they are
given limited weight and do not provide sufficient support to alter the [RFC] arrived at herein
since those perceptions are somewhat <u>inconsistent</u> with the overall evidence of record and are <u>not</u>
<u>fully supported</u> by the medical record."  Tr. 23 (emphasis added).  The ALJ's use of both
"inconsistent" and "not supported" highlights one problem I see with reconciling the cases along
"language" lines, meaning distinguishing a "inconsistent/conflicting" rejection from an
"unsupported/uncorroborated by" rejection:  it is simply too easy to use the terms
interchangeably.  Clearly, I did not appreciate the difference in language when I first examined
the cases.  Magistrate Papak similarly used the term "inconsistent" when the ALJ himself used
"unsupported."

conflicting evidence. <u>Staley v. Astrue</u>, No. C09-1424-JLR, 2010 WL 3230818. at *18-19 (W.D.

Wash..July 27, 2010); <u>see</u> <u>also</u> <u>Matthews v. Astrue</u>, No. 3:10–cv–05496–BHS–KLS, 2011 WL

2940450, at *19 n.6 (W.D. Wash. June 17, 2011) (agreeing with analysis in <u>Staley</u> and noting

distinction between the ALJ discounting the lay witness's statements because of inconsistency

with the objective medical evidence as opposed to the ALJ generally finding the evidentiary

value of such lay witness statements "to be less than that provided by the objective medical

evidence").

      Similarly, in a decision from this Court, Judge Haggerty cited <u>Lewis</u> for the proposition

that the ALJ may properly discredit lay witness testimony when the testimony conflicts with the

medical evidence, and <u>Bruce</u> for the proposition that the ALJ may not discredit such testimony

when the medical records are simply silent regarding the restriction described by the lay witness.

<u>Atwood v. Astrue</u>, 742 F. Supp.2d 1146, 1152  (D. Or. 2010).

      Not only have the cases recognized the "language-based" rationale for harmonizing the

<u>Bruce/Smolen</u> and <u>Vincent/Lewis/Bayliss</u> cases, the rationale is supported by SSR 88-13.  As

indicated above, SSR 88-13 provides that in situations where a claimant's alleged or reported

symptoms such as pain suggest the possibility of a greater restriction on functional ability than

can be demonstrated by the objective medical evidence, "reasonable conclusions" regarding any

limitations can be derived from the consideration of "other information in conjunction with

medical evidence."  SSR 88-13, 1988 WL 236011, at *2.  This, the ruling explained, was

"consistent with court decisions which require that statements of the claimant or his/her

physician as to the intensity and persistence of pain or other symptoms which may reasonably be

accepted as consistent with the medical signs and laboratory findings are to be included in the

evidence to be considered in making a disability determination." Id. (further explaining that the RFC assessment must include a discussion of why reported daily activity restrictions are or are not reasonably consistent with the medical evidence). Thus, SSR 88-13 provides support for the Vincent/Lewis/Bayliss line of cases, which, even though they concern lay testimony and not the claimant's testimony, recognize that testimony which is inconsistent with the medical evidence may be properly rejected.

As Smolen noted, however, SSR 88-13 contained an additional consideration: when the claimant's allegation about the inability to work "is not supported by objective medical evidence," the ALJ should obtain descriptions of the claimant's activities from a variety of sources, including "other third parties who would be likely" to have knowledge of the claimant's pains and its effects. Id. at *3 (emphasis added). Thus, SSR 88-13 provides support for the Smolen/Bruce line of cases by recognizing that the ALJ should consider the testimony of lay witnesses when the objective medical evidence does not support or corroborate the claimed symptoms or limitations. Accordingly, at the time it was decided, Smolen was consistent with SSR 88-13's recognition of "parallel" tracks. The "language-based" distinction between the two lines of cases has a basis in the then-existing policies of the SSA.

The problem, however, with currently adopting defendant's proposed analysis and the "language-based" rationale for harmonizing the two lines of cases, is that SSR 88-13 was superseded even before Smolen was published and the SSR which replaced it did not retain the distinction between testimony that was inconsistent with the objective medical evidence and testimony taken because the allegations were unsupported by the objective medical evidence. Moreover, the regulations published in 1991, five years before Smolen was decided and which

codified the policy statement expressed in SSR 88-13 also failed to retain this distinction.

> Bond, a 2010 case from the Central District of California explained that
>
> the rationale that underlay Smolen has undergone change. Smolen quoted from
> SSR 88-13 to the effect that where an "allegation [of subjective symptom] is not
> supported by objective medical evidence in the file, the adjudicator shall obtain
> detailed descriptions of daily activities by directing specific inquiries about the
> [symptom] and its effects to . . . third parties who would be likely to have such
> knowledge." SSR 88-13, quoted in Smolen, 80 F.3d at 1289. SSR 88-13 itself has
> been superseded, see SSR 95-5p (1995), and, according to SSR 95-5p, the policy
> interpretations set out in SSR 88-13 have been codified in properly noticed and
> adopted administrative regulations. See Massey v. Commissioner, --- Fed. Appx.
> ---- n. 1, 2010 WL 4116618 (9th Cir. Oct.19, 2010); 20 C.F.R. §§ 404.1529(c)(3)
> and 416.929(c)(3). Section 404.1529(c)(3) states in part:
>
>> Because symptoms, such as pain, are subjective and difficult to quantify,
>> any symptom-related functional limitations and restrictions which you,
>> your treating or examining physician or psychologist or other persons
>> report, which can reasonably be accepted as consistent with the objective
>> medical evidence and other evidence, will be taken into account as
>> explained in paragraph (c) (4) of this section in reaching a conclusion as to
>> whether you are disabled.
>
> 20 C.F.R. § 404.1529(c)(3) (emphasis added). Thus, the gist of what started out as
> SSR 88-13 as requiring consideration of lay testimony now appears in the Code of
> Federal Regulations, and says that the lay testimony must be consistent with the
> objective medical evidence. The regulations further state that "Your symptoms,
> including pain, will be determined to diminish your capacity for basic work
> activities to the extent that your alleged functional limitations and restrictions due
> to symptoms, such as pain, can reasonably be accepted as consistent with the
> objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4)
> (emphasis added). Thus, while the portion of SSR 88-13 that requires
> consideration of lay evidence has been retained, and further developed by case
> law, . . . , the regulations now provide fairly explicitly that one factor for rejecting
> subjective testimony can be its conflict with the medical evidence.

Bond, 2010 WL 4272870, at *2 (citations omitted) (noting further that an ALJ "may reject the

testimony of a claimant at least in part on the grounds that it conflicts with medical records [and

thus,] [i]t would not be sensible that a claimant's own statements could be rejected on such a

basis, but that the statements of third-party observers could not be so treated.").

I agree with Bond that the basis for the holdings in Smolen and Bruce that an ALJ may not reject lay testimony for being unsupported or uncorroborated by the medical evidence, is no longer in effect.  Thus, there is no longer a reason for concluding that an ALJ may properly reject lay testimony in "inconsistent/conflict" type cases, but cannot do so in "supportive/corroborative" type cases.

To the extent my previous Order concluded that an ALJ could not reject lay witness testimony at step four in the context of developing the RFC because such testimony was inconsistent with the objective medical evidence, that was error.  The governing regulations make clear that lay testimony that conflicts with or is inconsistent with the medical evidence may be rejected on that basis at any point in the sequential disability analysis.

If the lay testimony does not actually conflict with, or is not inconsistent with, the medical evidence, the ALJ may still reject the lay witness testimony after evaluating and discussing the relevant evidence, including noting whether the lay testimony is or is not supported by or corroborated by the objective medical evidence.  But, this discussion must occur within the parameters otherwise applicable to the evaluation of evidence generally and to the evaluation of lay witness testimony in particular.

"'The ALJ is responsible for determining credibility, resolving conflicts in the medical testimony, and for resolving ambiguities.'"  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 0135, 1039 (9th Cir. 1995)).  However, the ALJ's findings must be supported by specific, cogent reasons.  Reddick v. Chater, 157 F3d 715, 722 (9th Cir. 1998).

Lay testimony regarding a claimant's symptoms is competent evidence which the Secretary must take into account. Stout v. Commissioner, 454 F.3d 1050, 1053 (9th Cir. 2006); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e) (evidence from non-medical sources such as family members, friends, and neighbors, may be used to show the severity of an impairment and how it affects the claimant's ability to work). It is error for an ALJ to completely fail to comment on lay testimony offered as to symptoms or a claimant's ability to work. Stout, 454 F.3d at 1053; Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (lay testimony concerning the claimant's ability to work "cannot be disregarded without comment").[4]

The ALJ is required to give specific reasons, germane to the lay witness to properly discount lay testimony. Bruce, 557 F.3d at 1115 ("If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons that are germane to each witness [and] the reasons germane to each witness must be specific") (internal quotation omitted); Regennitter v. Commissioner, 166 F.3d 1294, 1298 (9th Cir. 1999) (ALJ can reject lay testimony "only by giving specific reasons germane to each witness").

The sufficiency of the ALJ's rejection of lay witness testimony, regardless of whether the rejection is because the testimony is not supported or corroborated by the objective medical evidence or is because the testimony is inconsistent or conflicts with the objective medical evidence, will depend on the particular case and the thoroughness with which the ALJ conducts and discusses his or her evaluation of the evidence. At least one court has found that an ALJ's

---

[4] Failing to comment at all on lay witness testimony may be found harmless error, but only when the reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056.

general reference to the lay testimony as "not consistent with the bulk of the medical evidence of record" was "too vague to constitute even a 'germane' reason for discounting the statements and comments of plaintiff's mother, in light of the level of detail she provided therein in regard to plaintiff's symptoms and functioning."  Edwards v. Astrue, No. C08-5730BHS,  2009 WL 2855730, at *11 (W.D. Wash. Aug. 31, 2009).

In the instant case, the ALJ discussed plaintiff's sister's testimony and appeared to give three reasons for rejecting it.  The first reason is not well-explained.  The ALJ states:  "The statements of Ms. Fuller indicated that the claimant reported similar allegations and limitations to her as he has alleged in his reports and testimony to the Administration.  Since the reporting of the claimant is not found to be credible for reasons noted herein, the parroting of those allegations by the witness only slightly enhances that reporting."  Tr. 23.  The ALJ explained that Fuller testified that plaintiff himself reported to Fuller allegations similar to those he alleged in his reports and to the SSA ("claimant reported similar allegations and limitations to her as he has alleged in his reports and testimony to the Administration") (emphasis added).  Then, the ALJ further explained that because he had found plaintiff not credible, Fuller's "parroting" of plaintiff's allegations only "slightly enhance[d] that reporting."  The reference to "that" reporting must refer to plaintiff's reporting because it is the only "reporting" the ALJ had already mentioned.  Thus, a close reading of the ALJ's reasoning indicates that this is not actually a rejection of Fuller's testimony, but is an explanation of why plaintiff's report of allegations to Fuller did not enhance his own testimony.

Magistrate Judge Papak did not discuss the ALJ's lack of clarity because even disregarding it, he properly found that the ALJ had mischaracterized Fuller's statements because

17 - OPINION & ORDER

Fuller did not repeat allegations that plaintiff had made to her but instead had described her own

independent observations of plaintiff's physical condition.  Findings & Rec. at pp. 19-20.

Next, the ALJ stated that Fuller's "objective observations" were not clearly inconsistent

with the RFC adopted by the ALJ.  For example, Fuller's testimony that plaintiff could not lift 80

pounds was not inconsistent with the RFC's limitation to lifting or carrying 20 pounds

occasionally and 10 pounds frequently.

The final reason given by the ALJ in support of rejecting Fuller's testimony was that

Fuller's perceptions were inconsistent with the overall record and not fully supported by the

medical record.  Magistrate Judge Papak affirmed the ALJ because contrary to Fuller's testimony,

two state agency medical consultants found that plaintiff had the ability to work an eight-hour

workday and the state agency physicians found that he had no significant loss of strength or

sensation and that he remained capable of physical exertion.  Findings & Rec. at p. 20.  While the

ALJ did not, in the context of discussing Fuller's testimony, specifically refer to these findings by

the state agency medical consultants and physicians, his finding that Fuller's testimony was

inconsistent with the record is, as demonstrated by Magistrate Judge Papak, supported by

substantial evidence in the record.  Thus, the ALJ did not err in failing to fully credit Fuller's

testimony.

/ / /

/ / /

/ / /

/ / /

/ / /

18 - OPINION & ORDER

CONCLUSION

I grant defendants' motion to alter or amend [#36]. Accordingly, the Court ADOPTS in full Magistrate Judge Papak's Findings and Recommendation (#29). The decision of the Commissioner is affirmed.

IT IS SO ORDERED.

DATED this ___6th___ day of _December_____, 2011.


 /s/ Marco A. Hernandez_____
MARCO A. HERNANDEZ
United States District Judge

19 - OPINION & ORDER